UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DERWIN GOLDSON,

        Plaintiff,

-against-

CITY OF NEW YORK; JOHN DOE #1; JOHN DOE #2; JOHN DOE # 3,

        Defendants.

23-CV-9889 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently detained at West Facility on Rikers Island, is proceeding *pro se* and *in forma pauperis* ("IFP"). Plaintiff filed this complaint under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. By order dated January 2, 2024, the Court directed Plaintiff to amend his complaint to address deficiencies in his original pleading. The Court received Plaintiff's amended complaint on March 4, 2024. For the reasons set forth below, the Court dismisses the amended complaint, but grants Plaintiff 30 days' leave to replead his claims in a second amended complaint.

## BACKGROUND

In the original complaint, Plaintiff sued the New York City Department of Correction ("DOC"), the City of New York, and the Warden of the Eric M. Taylor Center ("EMTC"). Although he asserted claims under the Fourth Amendment and claims for "confiscated legal mail," "unsanitary conditions," and violations of his right to a "speedy trial" and "freedom of speech," he did not allege any facts in support of these claims. By order dated January 2, 2024, the Court: (1) dismissed Plaintiff's claims against DOC, construed the complaint as asserting claims against the City of New York, and dismissed those claims for failure to state a claim on which relief may be granted; (2) dismissed his claims against the Warden of EMTC because

Plaintiff alleged no facts suggesting the Warden was personally involved in any of the events giving rise to his claims; (3) dismissed Plaintiff's Fourth Amendment strip search claims for failing to allege sufficient facts to state a claim on which relief may be granted; and (4) dismissed his constitutional claims related to his mail, living conditions, freedom of speech, and speedy trial because he alleged no facts in support of those claims. The Court granted Plaintiff leave to amend his complaint to state valid constitutional claims under Section 1983.

On March 4, 2024, the Court received Plaintiff's amended complaint, in which he names as Defendants the City of New York, a John Doe correction officer, a John Doe captain, and a John Doe Warden of EMTC. The events giving rise to Plaintiff's claims occurred when he was detained in EMTC from July 25, 2023 through January 4, 2024. The following allegations are taken from the amended complaint. The showers at EMTC "have mold" and the shower water "makes [Plaintiff] itch." (ECF 6, at 4.) The toilets "spit back at you when you flush [them]." (*Id.*) The food is cold and "some times half eaten." (*Id.*) Plaintiff is allergic to seafood, and when seafood was served in the dining hall, Plaintiff was given beans or a veggie patty rather than "meat protein." (*Id.* at 5.)

Plaintiff received recreation only five times "in a closed gym" during the five months he was at EMTC. (*Id.* at 4.) There are rats and roaches in the facility. Plaintiff drank water from the faucet with no ice, which gave him "bad heartburn." (*Id.*) The water also "comes out brown" when Plaintiff brushes his teeth. (*Id.*) His sneakers "have no protection on the bottom," causing him to get callouses on his feet. (*Id.*) The ceilings in the facility "are cracked and peeling" (*Id.*) Plaintiff's bed is "like a yoga mat" and does not have a pillow. (*Id.* at 5.)

Plaintiff further alleges that there is mail that he "never received." (*Id.* at 4.) He also "didn't get [his] discovery unfile [during his] 100 days in here, and was never granted a 30.30 motion even though" he believes he is entitled to one. (*Id.*)

Plaintiff seeks money damages and an order directing EMTC to give him the mail that he missed, and directing that EMTC be closed "until they make it safe and liveable." (*Id.* at 5.)

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

**A.   Claims against the City of New York**

In its order to amend, the Court construed Plaintiff's claims against the New York City Department of Correction as asserted against the City of New York, and dismissed those claims because Plaintiff did not allege any facts suggesting that the City has a policy, custom, or practice that violated his rights. In the amended complaint, Plaintiff names the City of New York as a defendant, but he again does not allege any facts suggesting a viable municipal liability claim against the City of New York. The Court therefore dismisses Plaintiff's claims against the City of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). If Plaintiff has allegations suggesting a viable constitutional claim against the City of New York, he may replead those claims in a second amended complaint.

**B.   Conditions of confinement**

Plaintiff alleges that he while he was detained in EMTC, he was subjected to unconstitutional conditions of confinement. Because it appears that Plaintiff was a pretrial detainee during the events giving rise to his claims, the claims arise under the Due Process

3

Clause of the Fourteenth Amendment, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

To state such a conditions-of-confinement claim, a plaintiff must satisfy two elements: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious to pose an unreasonable risk to his health or safety, and (2) a "mental" element, which requires a showing that a correction official acted with at least deliberate indifference to the challenged conditions. *Id.*

For the objective element, a pretrial detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks omitted).

For the subjective element, a pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The mere negligence of a correction official is not a proper basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).

Many of Plaintiff's allegations regarding his conditions of confinement, as pleaded in the amended complaint, do not suggest an objectively serious risk of serious damage to his health.

4

For example, to amount to a constitutional violation, a deprivation of food or nutrients must create a serious danger to the health of the inmate. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678, 683, 687 (1978) (holding in the context of the Eighth Amendment, a diet of fewer than 1,000 calories per day would be "intolerably cruel for weeks or months"); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (holding that placing plaintiff on a nutritionally inadequate restricted diet for fourteen days was likely to cause serious harm); *Dixon v. Fishkill Corr. Fac.*, No. 17-CV-1123 (NSR), 2019 WL 2866489, at *3 (S.D.N.Y. July 2, 2019) (plaintiff's allegations that he did not receive a meal for over 30 hours on three occasions during a single week and that the food he was served was nutritionally inadequate amounted to a substantial deprivation of food under the Eighth Amendment).[1] Plaintiff's allegations of receiving cold food and being provided with vegetable-based sources of protein as an accommodation to his seafood allergy do not suggest an objectively serious risk to his health.

Similarly, Plaintiff alleges that the toilets "spit back at you when you flush [them]." (ECF 6, at 4.) While exposure to feces, urine, and sewage water could violate constitutional rights, *see Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001), Plaintiff does not identify what it is that is "spit[ting] back" from the toilets or the frequency with which he was exposed to such conditions, *see, e.g.*, *Carr v. Canty*, No. 10-CV-3829 (JPO), 2012 WL 3578742, at *3 (S.D.N.Y. Aug. 16, 2012) (dismissing complaint that alleged prisoner experienced plumbing deficiencies because he "must do more than make conclusory allegations of 'poor plumbing'").

Even if the Court assumes that Plaintiff has adequately alleged an objectively serious condition, he alleges no facts suggesting that any particular defendant, including the three John

---

[1] The objective prong of the deliberate indifference standard is the same under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Darnell*, 849 F.3d at 30.

Doe defendants, knew of or should have known of the serious condition and failed to remedy it. The Court therefore dismisses Plaintiff's Section 1983 conditions of confinement claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his conditions of confinement claims in an amended complaint that alleges facts to satisfy the objective and subjective prongs of the deliberate indifference standard,

**C.    Interference with mail claims**

The Court liberally construes Plaintiff's claim that he has not received mail, possibly including discovery materials, as arising under the First Amendment. A prisoner's First Amendment rights encompass the right to "adequate, effective and meaningful" access to the courts and to the free flow of incoming and outgoing mail. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)).

Plaintiff's allegations concerning his mail potentially implicate both an access-to-courts claim and a general mail tampering claim.

a.    Access to courts claim

Prisoners have "a constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds*, 420 U.S. at 824-28). Protecting these rights "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law

6

libraries or adequate assistance from persons trained in the law." *Bourdon v. Loughren*, 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds*, 420 U.S. at 821, 828). Assistance from prison authorities, however, is "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks omitted).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct: (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis*, 320 F.3d at 351 (internal quotation marks omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 546 U.S. at 415. A mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986)). Furthermore, when a prisoner with appointed counsel claims that prison officials hindered his efforts to defend himself or pursue other legal claims, "he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts." *Bourdon*, 386 F.3d at 98.

Here, Plaintiff, who is a pretrial detainee with pending criminal proceedings, alleges that he never received his discovery file. As a preliminary matter, the Court notes that Plaintiff does not explicitly allege that his failure to receive discovery materials was the result of problems with the mail. Even if the Court assumes that Plaintiff did not receive discovery materials

7

because of a problem with the mail, he does not allege that any defendant deliberately and maliciously tampered with his mail. Nor does he allege any facts suggesting that he is pursuing a "nonfrivolous, 'arguable' underlying claim" that has been hindered as a result of delays or withholding of his mail. *Harbury*, 546 U.S. at 415. Furthermore, even if Plaintiff, who is presumably represented by counsel in his pending criminal case, is pursuing a meritorious legal issue arising from his criminal proceedings, he does not allege any facts explaining why his counsel would be unable to assert the claims on his behalf.[2] *See Bourdon*, 386 F.3d at 98. Because Plaintiff does not allege the existence of a valid nonfrivolous underlying cause of action, and he does not explain why his defense attorney could not pursue any arguments arising from discovery materials in his criminal case, he fails to state an access to courts claim under the First Amendment.

The Court grants Plaintiff leave to replead his claims in a second amended complaint naming as defendants the individual DOC officers whom he alleges violated his rights and alleging additional facts to state a Section 1983 access to court claim.

b.   Mail tampering claim

To state a claim based on general mail tampering, a plaintiff must allege that the incidents: (1) suggest an ongoing practice of censorship unjustified by a substantial government interest, or (2) have unjustifiably chilled the prisoner's right of access to the court or impaired his legal representation. *Davis*, 320 F.3d at 351. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.* at 351-52. As few as two incidents of mail tampering, however, may constitute a First Amendment violation if they are indicative of

---

[2] Nor does Plaintiff allege any facts suggesting that he was been prohibited from meeting with his attorney for the purpose of reviewing discovery materials or otherwise assisting in his defense.

"regular" and "unjustifiable" interference with a prisoner's mail. *Id.* at 351; *see Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986).

Plaintiff does not allege enough facts to suggest that correction staff interfered or tampered with his mail in a manner that rises to the level of a constitutional violation. He alleges only that he has "had mail that [he] never received." (ECF 6, at 4.) Plaintiff's allegations do not suggest that correction staff subjected him to regular and unjustifiable interference with his mail or that such interference affected his ability to access the courts. Moreover, although Plaintiff names several John Doe defendants, he does not allege that any of them were directly involved in interfering with his mail.

The Court therefore dismisses Plaintiff's mail-tampering claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his mail tampering claims in a second amended complaint naming as defendants the individual officers whom he alleges violated his rights and alleging additional facts sufficient to state a Section 1983 access to the court or mail tampering claim. For an access to the court claim, Plaintiff must allege facts suggesting that he was hindered from pursuing an arguably meritorious legal claim for which he is not represented by counsel. In support of a mail tampering claim, he must allege facts indicating that named defendants subjected him to regular and unjustifiable interference with his mail.

**D.     Speedy trial claims**

In his original complaint, Plaintiff asserted, without providing any factual support, that his "speedy trial" rights were violated. In the amended complaint, he alleges that he was "never granted" a motion under New York Criminal Procedure Law § 30.30, even though he believes he is entitled to one. (ECF 6, at 4.)

9

Section 30.30 is a New York state statutory provision that "addresses how much time may elapse between the commencement of a criminal action and when the case is trial ready." *Parrish v. Lee*, No. 10-CV-8708 (KMK), 2015 WL 7302762, at *11 (S.D.N.Y. Nov. 18, 2015). Section 30.30 "is purely a creature of New York state statute and does not protect a federal constitutional right." *Id.*; *see Cadilla v. Johnson*, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim."). Because Section 30.30 does not protect a federal constitutional right, "a violation of § 30.30 cannot be the basis of a § 1983 claim." *Jackson v. Marshall*, No. 04-CV-3915, 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008). Rather, when evaluating a constitutional speedy trial claim under the Sixth Amendment, "courts analyze four factors: length of the delay, the reason for the delay, the [plaintiff's] assertion of his right, and prejudice to the [plaintiff]." *Id.* (citing *Baker v. Wingo*, 407 U.S. 514, 530 (1972)).

Here, Plaintiff alleges no facts suggesting that his federal right to a speedy trial was violated. The Court therefore dismisses Plaintiff's Section 1983 speedy trial claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead his constitutional speedy trial claims in a second amended complaint.

**E.     State law claims**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its

supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Although the Court has already granted Plaintiff permission to amend his complaint once, the Court cannot conclude that further amendment would be futile. Because Plaintiff may be able to allege additional facts to state a valid Section 1983 claim for unconstitutional conditions of confinement, mail tampering, and violation of his constitutional right to a speedy trial, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

The Court dismisses the complaint for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), but grants Plaintiff 30 days' leave to replead his claims in a second amended complaint.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   April 29, 2024
         New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge